UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:23-CR-00131-KKC-MAS-1 |
| ) | |
| DAVID ALLEN EDMONDS, ) | |
| ) | |
| Defendant. ) | |

**<u>DETENTION OPINION & ORDER</u>**

The Indictment alleges that Defendant David Allen Edmonds ("Edmonds") knowingly possessed a firearm while having previously been convicted as a felon. [DE 1 (Indictment)]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(E). After considering the record—including the Pretrial Services Report ("PSR"), testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Edmonds pending trial.

**I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

According to the PSR, Edmonds was born in Lexington in November 1984 and has lived in Lexington his whole life. He was primarily raised by and lived with his grandmother, Mary Edmonds, who also resides in Lexington. [DE 12 (PSR), PageID# 26]. Edmonds' criminal history begins with being charged with habitual truancy at 13 and 14 and then with a concealed weapon charge in Fayette County

1

District Court when he was 16. [DE 12 (PSR), PageID# 27–28]. He was on probation until he turned 18.

Edmonds' adult criminal history is extensive. Some charges are relatively minor, including various traffic infractions between 2002 and 2007, most of which were dismissed. [DE 12 (PSR), PageID# 29–32]. However, several other more serious charges also marr his criminal history. For instance, in 2004, Edmonds was sentenced to 6 years imprisonment by the Fayette County District Court for trafficking cocaine. [DE 12 (PSR), PageID# 33]. He was granted parole in December 2005, but the court revoked parole in 2007 following his being charged with various state court charges, including a new drug trafficking offense. The state court charges were dismissed when a federal indictment issued, charging Edmonds with possession with intent to distribute cocaine. [DE 12 (PSR), PageID# 33] Ultimately, Edmonds pled guilty to the charge, and District Judge Joseph Hood sentenced him to 72 months imprisonment followed by eight years of supervised release. Edmonds began his term of supervised release in July 2012, and it was revoked in July 2016 following new drug trafficking charges involving cocaine. For the violation, he was sentenced to 30 months' imprisonment with no term of supervised release to follow. [DE 12 (PSR), PageID# 33]

After his release from federal custody, Edmonds' criminal activity was relatively minor until he was charged in Fayette County Circuit Court for being a convicted felon in possession of a handgun and a persistent felony offender. The instant Indictment was prompted by Edmonds' conduct while out on bond for his state

charge. According to the proffer offered by counsel during the detention hearing, an incident involving a firearm in his vehicle led to the federal charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## II.  LEGAL FRAMEWORK

When the United States moves to detain a defendant pending trial, the Court conducts a two-step inquiry under the Bail Reform Act ("BRA"). *See, e.g.,* United *States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). First, the Court must determine whether a detention hearing is permissible under § 3142(f). "Congress did not intend to authorize preventative detention unless the judicial officer first finds that one of the section 3142(f) conditions for holding a detention hearing exists." *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). *See also United States v. Hardon*, No. 98-1625, 1998 WL 320945, at *1 (6th Cir. June 4, 1998); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992).

Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any "condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). [1] Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more

---

[1] Edmonds' charges do not create a presumption of detention. *See* 18 U.S.C. § 3142(e)(2),(3).

accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with the conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impact its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.[2]

---

[2] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the

### III.   ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. [DE 10]. Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether the United States met its burden of persuasion that the § 3142 factors demand detention.

#### A. RISK OF NONAPPEARANCE

In assessing the risk of nonappearance posed by Edmonds under the BRA, the Court carefully considers the proffer and information provided in the Pretrial Services Report ("PSR"). The primary focus is on Edmonds' history of compliance with court-ordered conditions. Although his criminal record does not indicate failures to appear for scheduled court dates, it does reveal a persistent pattern of reoffending while under court-ordered conditions. Notably, the more serious offenses,

---

community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

particularly those related to drug trafficking, occurred during periods when Edmonds was either on parole from state court convictions or under supervised release following conviction in this Court. This recurring pattern of criminal behavior under judicial supervision significantly undermines the Court's confidence in Edmonds' willingness to adhere to release conditions if granted pretrial release.

The Court also evaluates Edmonds' familial and community ties and employment history. The PSR highlights Edmonds' lifelong residency in the community and his strong family connections, including responsibilities towards two minor children. Edmonds' reliance on his relationship with his maternal grandmother, who has been a primary caregiver and with whom he intermittently resides, is taken into account.[3] However, there are concerns regarding the veracity and feasibility of this living arrangement for purposes of pretrial release. United States Probation Officer (USPO) Chad Moss, who testified during the detention hearing, and defense counsel have not directly confirmed with Edmonds' grandmother her willingness and ability to house Edmonds and ensure his compliance with Court-ordered release conditions. Additionally, the United States pointed out in its oral arguments that Edmonds was living with his grandmother while he was committing his early juvenile criminal offenses, raising questions about the effectiveness of this living arrangement in ensuring compliance with court orders.

---

[3] During the detention hearing, the Court directly questioned Edmonds regarding how often and under what circumstances he resided with his maternal grandmother. After conferring with Edmonds, defense counsel clarified that Edmonds usually resides with his girlfriend and mother of one of his children but, on frequent occasions, also lives with his maternal grandmother.

In terms of employment, the lack of current full-time employment does not *per se* favor detention. Edmonds has maintained various forms of employment throughout his adult life, including as a handyman performing odd jobs. His employment history does not decisively influence the detention decision. Regarding substance use, the PSR notes Edmonds' history as a chronic marijuana user, as indicated in his federal presentencing report. During the detention hearing, defense counsel stated that Edmonds self-reported the substance use disorder to qualify for a Residential Drug Abuse Program (RDAP) and that he does not, in fact, have a substance use disorder that might exacerbate a risk of nonappearance. While this factor alone might not heavily impact the risk of nonappearance, the Court is concerned about the discrepancies in Edmonds' representations to the Court regarding his substance use, which cast doubt on his candor and trustworthiness.

Given these considerations, the Court concludes that the United States has provided preponderant evidence that Edmonds poses a risk of nonappearance. This finding is central to Edmonds' consistent criminal conduct pattern while released under court-imposed conditions. This pattern is exemplified by the current federal indictment, which arose from actions allegedly taken while Edmonds was out on state bond for similar charges. Furthermore, the lack of verification of critical information presented in the PSR and by Edmonds during the detention hearing, particularly regarding his living arrangements and the role of his grandmother, further exacerbates these concerns. The absence of direct testimony or confirmation from

7

USPO or the grandmother regarding these living arrangements leaves the Court reliant solely on Edmonds' assurances.

Given Edmonds' history of non-compliance with court-ordered conditions and his questionable truthfulness, the Court finds it impracticable to devise conditions that would adequately mitigate the risk of his nonappearance since condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance"); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance"). Thus, the Court finds that no conditions exist to mitigate Edmonds' nonappearance risk.

### B. RISK OF DANGER TO THE COMMUNITY

The Court, though it has already determined that pretrial detention is appropriate due to Edmonds' risk of nonappearance, examines the danger-based detention for thoroughness. The Court concludes that the United States has not demonstrated by clear and convincing evidence that Edmonds represents a significant danger to the community.

#### 1. Nature and Circumstances of the Offense

According to 18 U.S.C. § 3142(g)(1), the Court must consider "the nature and circumstances of the offense charged." In Edmonds' case, this factor does not strongly

8

support detention.  The current charges, primarily being a felon in possession of a firearm, lack contextual elements that would indicate a high risk of danger to the community.  Edmonds' previous firearm-related offense dates back to when he was 16, and the PSR does not indicate a pattern of violent firearm use.  Moreover, his past convictions for drug trafficking, while serious, are relatively dated (2007 and 2015) and do not directly correlate with his current firearm charge.

### 2. Weight of the Dangerousness Evidence

As mandated by 18 U.S.C. § 3142(g)(2), the Court evaluates "the weight of the evidence against the person."  It is vital to clarify that this consideration pertains to the evidence of dangerousness, not guilt.  The Court notes that while Edmonds has a history of drug trafficking, the current allegations do not inherently demonstrate an immediate danger to the community.  There is no present evidence linking his firearm possession with concurrent drug trafficking or violent activities.

### 3. History and Characteristics

Per the criteria in 18 U.S.C. § 3142(g)(3), the Court assesses Edmonds' history and characteristics, including his physical and mental condition, family ties, employment, criminal history, and substance use history.  While Edmonds has a concerning history of drug trafficking, there is no recent evidence of violent behavior or involvement in drug distribution.  His familial ties, as discussed above, particularly his connection to his grandmother and children, and his intermittent employment history, are not indicative that he poses a danger to the community.

### 4. Nature and Seriousness of the Danger Risk

Finally, under 18 U.S.C. § 3142(g)(4), the Court considers "the nature and seriousness of the danger to any person or the community." The Sixth Circuit has held that felon in possession is not a crime of violence within the context of the BRA. *United States v. Hardon*, 149 F.3d 1185 (Table), 1998 WL 320945 (6th Cir. 1998) (unpublished). *See United States v. Singleton*, 182 F.3d 7, 16, 337 U.S. App. D.C. 96 (D.C.C. 1999) (same). In Edmonds' case, the nature of the current charges, primarily being a non-violent firearms offense, does not constitute a clear and immediate danger to the community. The absence of recent violent conduct or drug trafficking activity in Edmonds' history does not support a conclusion of significant danger to the community.

In sum, the Court finds that while Edmonds' criminal history is not devoid of concern, the specific circumstances of his current charges and historical background do not meet the threshold of clear and convincing evidence necessary to deem him a danger to the community. The United States has not provided sufficient evidence to warrant danger-based detention under the BRA.

## IV. CONCLUSION

Ultimately, for the reasons stated above, the Court finds that the United States proved by a preponderance of the evidence that no conditions could ensure Edmonds' future appearance at Court proceedings but failed to prove by clear and convincing evidence that Edmonds poses a danger to the community. Accordingly, the Court **GRANTS** the United States' oral detention motion.

10

The parties may appeal this Order under the terms of 18 U.S.C. § 3145.

Entered this 2nd of January, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY